## W. E. & J. W. DANCEY *v.* G. A. SUGG, Admr.

1. EVIDENCE — EXECUTION OF INSTRUMENT — PROOF OF SIGNATURE OF ONE OF TWO MAKERS SUFFICIENT TO ADMIT IT.—Proof of the signature of one of two makers of a bill of sale of a slave is sufficient proof of its execution to entitle it to be read in evidence.

2. WHERE A PROMISSORY NOTE WAS GIVEN TO LIFT A DRAFT, FAILURE OF CONSIDERATION OF THE DRAFT IS ADMISSIBLE IN AN ACTION ON THE NOTE.— The purchaser of a slave, warranted to be sound, who gave his time draft in payment, which was accepted but not paid, and afterward took up the draft by giving a promissory note for principal and interest of the debt, is entitled, when sued on the note, to defend on the ground of a breach of the warranty o the soundness of the slave, and is not precluded by having given a note for the draft.

ERROR to circuit court of Madison county. CAMPBELL, J.

*Luckett & Fearn* and *E. J. Bowers*, for plaintiffs in error.

1. The court erred in excluding from the jury the bill of sale executed by Hancock to plaintiffs in error. The suit is in the name of Hancock, administrator, alone, and in order to defeat him, it was clearly competent for the defendants in the court below to show that the consideration for which the note sued on was given, had failed. This could only be done by introducing the bill of sale, and proving *aliunde*, which was offered to be done, that the negro woman Rachel, mentioned in the bill of sale, was unsound at the time of sale. The foundation for the introduction of the bill of sale was certainly laid, according to the rules of

law, by the testimony of the witness Thomas Shackleford. See Cowen and Hill's notes, part 2, to Phill. on Ev. (2d Am. ed.) 1331, 1332, note 913, p. 487, and authorities there cited. See, also, Titford v. Knott, 2 Johns. Cas. 214. Turnspeed v. Hawkins, 1 McCord, 278 ; Faber v. Hilliard, 2 N. H. 481, 482 ; Thatcher v. Goff, 11 Law Rep. 94 ; Johnson v. Daverne, 19 Johns. 134–136.

2. The pleadings in this case show that Hancock, whose administrator sues alone in the action, and W. R. Payne were partners in selling negroes at the date of the execution of the bill of sale ; and the execution of the bill of sale by one of the partners was the execution by both, so that it makes no difference whether the name of Payne was signed to the bill of sale or not. Even in relation to deeds which are solemn instruments under seal, the power to execute will, in many instances, be personal. 3 Phill. on Ev.; Hill and Cowen's notes (2d Am. ed.), 92, 93, notes 311, 361–365. And our statute makes the liabilities of partners, to third parties, joint and several, on any promise, liability, or contract. See Rev. Code, p. 357, § 3, art. 10.

3. The court erred in refusing to permit experts to be introduced, for the purpose of proving to the jury that the body of the bill of sale and the signatures "M. S. Hancock, W. J. Payne" thereto, were written by the same hand that wrote "M. S. Hancock," which last was proved by Thomas Shackleford to have been written by Hancock himself, whose personal representative brings this suit. It will be observed that the object of seeking to introduce this testimony, which was excluded by the court below, was not to establish the fact that M. S. Hancock wrote the name " W. J. Payne," by comparing the signature with other specimens of Hancock's writing, for this would have been objectionable unless the witness speaking had seen Hancock write such specimens ; but it was to enable those who, on account of their skill and experience, are competent witnesses to say, whether, in their opinion, the body of the bill of sale and the name " W. J. Payne" were written by the same hand

that wrote the name M. S. Hancock, was clearly admissible. 1 Phill. Ev. 290, 291 ; Lyon v. Lyman, 9 Conn. 55. And no distinction is made between criminal and civil. State v. Brunson, 1 Root, 307; Moody v. Rowell, 17 Pick. 490 ; State v. Candler, 3 Hawk. 393 ; Goodtitle ex dem. Revett v. Braham, 4 Tex. 497 ; Rex v. Cator, 4 Esp. N. P. Cas. 117.

4. The court erred in refusing the motion for a new trial for the reasons above stated, and because of the matter set forth in the affidavits of William E. Davey and others, and read upon the trial of said motion.

*George L. Potter*, for defendant in error.

1. The verdict is admitted to be correct upon the proofs, and the only exceptions are founded on the bill of sale, viz. : the exclusion of the bill of sale ; the exclusion of experts to prove handwriting of the bill of sale ; refusal of new trial on the ground of surprise, etc., which also relates to the bill of sale. There are legal reasons why this bill of sale could not be admitted in evidence, even though the handwriting had been fully proven ; and reasons why the verdict must have been for plaintiff, even though all the proofs proposed by defendants had been admitted. And if this be so, if the proposed proof showed no legal defense, then the verdict will not be disturbed, even though the court may have erred in some particular.

The bill of sale contains a general warranty of soundness, and was offered in aid of the only ground of defense, unsoundness. The question arises, was the proposed defense available in this action, there being a sale with warranty ? We say not. In such a case "the vendee is put to his action on the warranty, unless it be proved that the vendor knew of the unsoundness of the article, and the vendee tendered a return of it within a reasonable time." In this case there was no offer to prove that plaintiff knew of the unsoundness, nor that defendants offered to return the slave. Thornton v. Wynn, 12 Wheat. 183 ; Lewis v. Congrave, 2 Taunt. 2. Counsel for plaintiff in error seems

to misunderstand the point of these decisions. It does not relate at all, as he suggests, to the distinction between actions of deceit and warranty, but to the fact that the vendee has taken a warranty ; and they hold that, in such a case, he cannot resist payment but must resort to the warranty unless he proves that the vendee knew of the unsoundness.

2. The defendants proved by McBride, that the note sued on was given to take up a draft accepted by Coleman, Britton & Withers ; as he testifies, this draft was sent to him by plaintiff's intestate ; and, at the instance of defendants, this note was given "to release the acceptors on the draft," and as he says, "in all his negotiations with defendants, there had been no word of complaint about failure of consideration." As shown by him, defendants at the same time delivered to him collaterals to secure the payment of the note.

We say, that by thus acting, the defendants waived all objection on the score of unsoundness, if it existed. They gave the note in payment of the draft, and the acceptors were thus released.

It has been held, that if the maker of a note give a new note in payment of the whole amount of the first note, without objecting to the consideration ; this is a waiver of any defense arising out of the consideration. Cameron v. Hall, 3 Ala. 158.

In consideration of their making this note, the defendants procured the release of the acceptors on the draft. Suppose the consideration of the draft, as to the defendants, the drawers, had failed, could those acceptors avoid the acceptance on that ground ? We submit that they could not. This draft was drawn by defendants on Coleman, Britton & Withers, payable to M. S. Hancock and W. J. Payne, payees of the note. In law, the payees stood as strangers to the acceptors (1 Pars. on Notes and Bills, 179, 180), and could not plead failure of the consideration for which the draft was given. Ib. 177, 178. They would

be put to show a double failure or want of consideration, to wit, failure of consideration for their acceptance, and failure of the consideration given by the payees. Ib. 192, 193. And if the acceptors of the bill were thus liable, notwithstanding the failure of the consideration given by the payees, then the release of those acceptors, by giving up the bill for this note, is ample consideration to hold defendants bound for the note.

Again, the only plea in this case is the general issue, with notice of special matters to be proved under it. The defense was, of course, limited to the matters therein stated. The notices aver that "the consideration for which the note was given was a certain negro," then warranted sound, but unsound and worthless. The other notice avers that the note was executed "for and in consideration of a certain negro woman," etc., warranted sound, but then unsound and worthless. As the notice thus specified the consideration of the note, and raised the issue of a failure of that consideration, we say the defendants could not show any other consideration, and raise the question whether it had failed. But what did they attempt to do? They offered the bill of sale, which recites that the slave was sold for the draft on Coleman, Britton & Withers. Moreover, they had already proved by McBride that the note was not given for the slave, but was given "to release the acceptors on the draft." They had thus shown that the consideration of the note was not an unsound slave, as alleged in the notice, and they could not be heard to contradict their own witness.

The bill of sale was therefore not admissible in evidence; it was properly excluded, whether a wrong or a right reason was given for its exclusion. As presented, the bill of sale had no apparent relation to the controversy, and it was not until after it had been excluded and the exception taken that counsel stated what further proof they proposed to offer; the words are, "defendants, by their counsel, then and there excepted, stating that they were prepared to

prove," etc. It will be noted that the writing was excluded and the exception taken before such statement was made. What was the additional proof proposed to be made? Simply that the slave mentioned in the bill of sale "was unsound and worthless to the defendant, W. E. Dancey." It was not pretended they could show such unsoundness at the date of sale, but that the slave "was unsound" at some time. And they did not propose to make the necessary proof of an offer to return the slave in due time, or that the vendors knew of the unsoundness. The facts of the case, the bill, the note, the bill of sale, all in the names of "M. S. Hancock and W. J. Payne," show they were not partners; and, if the bill of sale were otherwise admissible, it is plain that it could not be read until proof had been made of the signatures of both Payne and Hancock, which was not done. This was necessary, in order to establish the bill of sale. As to the offer to prove the signatures by experts, it was properly rejected. The real offer was to prove handwriting by comparison. The experts were to examine the two signatures and say whether both were written by Hancock. This could not be legally done. 4 Phill. Ev., Cowen & Hill's notes, part 2, 487, *et seq.*, note 256.

Experts are sometimes admitted to give an opinion whether a contested writing is in a simulated hand, but not to prove signature. Ib. note 258. But, if the execution has been fully proved, the bill of sale was not admissible for the reasons before stated, and would have given no aid to the defense.

For these reasons the motion for a new trial was properly refused; and also because of laches. The defendant asserts that he was surprised that McBride could not prove the bill of sale; that he believed, and had reason to believe, he could prove it by him. But he had no just reason for that belief. He does not pretend that he had inquired of, or heard from, McBride on the subject. He just took it for granted, with-

out inquiry, and must abide the consequences of his negligence. As to his newly-discovered evidence, it appears the witnesses all lived in or near Canton and they were readily found, and their affidavits taken, in Canton, three days after the verdict. Look at the course of defendants, they give the draft, it is accepted and not paid, given, as they now assume, for an unsound slave. The draft falls due, and is not paid; and some three months afterward this note, with the guaranteed collaterals, is given; and for all this time, as McBride proves, there is no complaint of unsoundness, no offer at any time to return the slave; and no complaint made until after suit brought. To tolerate such a defense under such circumstances would be a trifling in the administration of justice.

TARBELL, J. :

This suit was brought upon a note of which the following is a copy :

"$1,282 53.            CANTON, Miss., March 14, 1861.

One day after date we promise to pay Martin S. Hancock and W. J. Payne, twelve hundred and eighty-two dollars and fifty-three cents, for value received.
                (Signed)        W. E. & J. W. DANCEY."

The defendants pleaded the general issue, with notice, etc. The plaintiff, after reading the note in evidence, rested his case. The defendants then called as a witness William McBride, the attorney for plaintiff, who testified that the consideration of the note sued on was a bill of exchange drawn by defendants on Coleman, Britton & Withers, of New Orleans, for $1,200, dated May 1, 1860, payable December 5, 1860, to the order of M. S. Hancock, and W. J. Payne, and interest added.

The following is a copy of said bill of exchange :

"$1,200.            CANTON, May 1, 1860.

On the fifth day of December next, pay to the order of

M. S. Hancock and W. J. Payne, twelve hundred dollars, value received and charge to account of

W. E. & J. W. DANCEY.''

" To Coleman, Britton & Withers,
New Orleans, La.''

This witness further testified that he did not know Hancock's handwriting. He produced and read in evidence a written assignment of several notes from defendants to plaintiff as collateral security for the payment of this note, these notes to be collected by plaintiff's attorney, the proceeds to be applied in payment of the demand sued on ; the surplus, if any, to be paid to defendants. The assignment of these demands as collateral security contained the following guaranty : "Now, we hereby guarantee in full the solvency of said parties, and the payment of said sums of money, in case said attorney fails to realize the money by suits at law ; " which assignment and guaranty is dated on the same day, with the note on which this suit is brought, and signed by defendants. He also proved and read in evidence a receipt for said demands given by himself, as attorney for plaintiff to defendants, in the words following : " The net proceeds of said claims are, when collected, to be applied to the satisfaction and discharge of said note, and the overplus, if any, to be paid over to said W. E. & J. W. Dancey, after paying attorney's fees." The witness also stated that, " in all his negotiations with defendants, there had been no word of complaint about failure of consideration, and that the arrangement made with defendants in taking this note and collaterals was, at the instance of defendants, to release the acceptors on the draft."

The defendants then offered in evidence a bill of sale, of which the following is a copy :

CANTON, Miss., May 1, 1860.

"We have this day sold Wm. E. Dancey, a negro woman, named Rachel, of dark complexion, aged about twenty-five years. We warrant said negro woman sound

in body and mind, and a slave for life. The above negro was sold for the sum of $1,200, in a bill on Coleman, Britton & Withers, New Orleans.

(Signed)    M. S. HANCOCK,<br>W. J. PAYNE."

Thos. Shackleford, another witness for defendant, testified that he knew the handwriting of M. S. Hancock, but did not know that of W. J. Payne ; that he " believed the signature of M. S. Hancock to the bill of sale was the signature of, and in the handwriting of M. S. Hancock ; that the body of the instrument, and said signature appeared to be in the same handwriting, and seem to have been written by one and the same person ; but he could not, state that the signature, W. J. Payne, was written by the same person who wrote the signature, M. S. Hancock, or the bill of sale ; that he knew nothing of the handwriting of Payne ; that he could not say that the signature of W. J. Payne, and the body of the instrument were in the same handwriting ; but that the signature, M. S. Hancock, was in the handwriting of the said Hancock." The defendants then offered said bill of sale in evidence, which, upon objection of plaintiff, the court rejected, and the defendant's counsel excepted, stating that they were prepared to prove that the negro therein mentioned was unsound and worthless to defendant, W. E. Dancey. "Defendants then offered to prove by experts that the handwriting in the body of said bill of sale, including the signature thereunto affixed, were written by one and the same person, to wit, M. S. Hancock, to which plaintiff's counsel objected, the objection sustained and the testimony excluded.

The jury, October 8, 1866, found for plaintiff the amount of the note and interest. On the 11th of the same month, the defendants filed affidavits on a motion for a new trial in the words following : "Defendants move for a new trial in this case for reasons set forth in the affidavit filed this 11th October, 1866." The motion was based upon surprise and

newly-discovered evidence, set forth in the affidavits. This motion was overruled.

The causes of error assigned are, 1st. In excluding from the jury the bill of sale ; 2d. In refusing the testimony of experts ; 3d. In overruling the motion for a new trial.

We have examined this case under a strong desire, if consistent, to affirm the judgment, but we find ourselves conducted clearly to a contrary conclusion. Hancock & Payne sold the negro woman, with a warranty of soundness, to the Danceys, May 1, 1860. Payment was proposed by draft on Coleman, Britton & Withers, payable December 5, 1860, which was accepted, but not paid. On March 4, 1861, about three months after the draft fell due, an arrangement was entered into between the Danceys and Hancock, Mr. McBride acting as his agent, by which the latter consented to accept the note sued on, with collateral security, in lieu of the acceptance. The same consideration, therefore, exists as to both the draft and the note.

It is true, that in a suit by Hancock & Payne against the acceptors, the defense now proposed could not have been inquired into, but the original relations of these parties have been voluntarily restored by their own free acts. By mutual agreement, the note of the vendees of the slave is received by the vendors.

With every disposition to affirm the judgment, we have considered this case in every point of view, and are of the opinion that the proposed defense is admissible. Such is the inevitable legal conclusion, the strict justice of which result will doubtless be determined by the developments of another trial. The note is payable to Hancock and Payne, at common law not negotiable, and signed by " W. E. & J. W. Dancey." Suit is brought by the administrator of Hancock as survivor, without objection, and his signature established. The signature of Hancock to the bill of sale having been proved, we are of the opinion it ought to have been received in evidence. Rev. Code, p. 355, arts. 1 and 2 ; ib. p. 357, art. 10. The question of waiver being presented

here for the first time, we defer an opinion thereon until after discussion and action .in the court below.  It will be unnecessary to discuss the other questions presented to us.

The judgment is reversed and the cause remanded.

On application a re-argument of this case was granted and had, and the following opinion delivered after the re-argument, to wit :

TARBELL, J. :

A petition for re-argument having been filed in this case, counsel for defendant in error therewith strenuously urges an affirmance of the judgment of the court below.  No new points or authorities are presented, but the views of counsel are pressed with such urgency that we may refer briefly to points we thought unnecessary to discuss in the decisions of the case.  We reversed the judgment upon a single point, to wit, error in excluding the bill of sale offered in evidence. Hancock & Payne sold Dancey & Dancey a negro slave woman, giving a bill of sale, with warranty of soundness. To secure the purchase-money a draft was given on a firm in New Orleans.  Subsequently this draft was exchanged, by arrangement between vendors and vendees, for the bill single of the vendees payable to the vendors secured by collaterals.  This suit is upon the note of the vendees by the administrator of one of the vendors.  Upon the trial, proof could be made only of one of the signatures to the bill of sale, to wit, of the plaintiff's intestate.  For the want of proof of the other signature, for this cause alone, the bill of sale was not allowed to be read in evidence.  This we hold to be error, and upon this ground we reversed the judgment and remanded the cause.

1. The first point made by counsel in support of the petition for re-argument is, that the notice of defense accompanying the plea is not full enough to admit the bill of sale in evidence.  The notice avers the consideration of the note to be the negro ; the bill of sale and warranty being referred

to in the notice; the draft was produced upon the trial; its consideration was undisputed; that the draft was taken up by the note sued on was established and not denied; but it is insisted that the facts with reference to the draft and its exchange for the note are not set forth, and, therefore, it is sufficient. This is too technical. It is impossible that the plaintiff did not perfectly understand the nature of the defense from this notice. That he did not, or that he was not fully prepared for trial, is not pretended; but the bill of sale was not objected to in evidence on the trial on this ground; and, besides, the right to amend was ample.

2. It is urged, that "when there is a warranty of soundness the vendee cannot defend in an action on a note given for the purchase-money, by merely proving a breach of the warranty, but he is put to his action on the warranty, unless it can be proved that the vendor knew of the unsoundness of the article, and the vendee tendered a return of it within a reasonable time;" as to which we observe that, except at a sale made by a judicial officer, executor, administrator or trustee, this doctrine has been settled otherwise in this state by a series of decisions, the soundness and justice of their conclusions never having been questioned or doubted.

3. Counsel reiterates, that, having given the note and collaterals to take up the draft and release the acceptors, the makers of the note thereby waived the defense set up by them. This point was not presented to nor passed upon by the court below. The cause was not tried nor disposed of with reference to it. The introduction of the bill of sale in evidence was objected to and rejected on the sole ground that one of the signatures was not proved. Whether the parties in substituting the note for the draft intended the former as payment of the latter, was not considered on the trial; nor was the substituted arrangement propounded as a waiver of defense to the warranty. Upon another trial, however, these questions will be kept in view, and the facts developed accordingly. If not then satisfactorily decided

by the court and jury, the case can be reviewed by this court.

We send this case back upon the sole point theretofore stated, expressing no opinion upon the questions of novation and waiver, because not adjudicated on the trial.

*The previous result is adhered to.*